IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ANTONIO G. CROSKEY, | ) CASE NO.: 1:18 CV 1476 |
| Plaintiff, | ) JUDGE DONALD C. NUGENT |
| v. | ) |
| | ) MEMORANDUM OPINION |
| DETECTIVE PERRY WHEELER, *et al.*, | ) |
| Defendants. | ) |

This matter is before the Court on the Defendants' Motion for Summary Judgment. (ECF #12). For the reasons that follow, Defendants' Motion for Summary Judgment (ECF #12) is granted.

FACTS[1]

Plaintiff Antonio Croskey filed this action on June 29, 2018, against Detective Perry Wheeler and the City of Mansfield, Ohio asserting three federal claims including violation of 42 U.S.C. § 1983 based upon race, excessive force during arrest and failure to provide timely medical care (Count 1); the City's failure to train and deliberate indifference (Count 2); and violation of 42 U.S.C. § 1985 (Count 3). Plaintiff also asserts state law claims of assault (Count 4); misuse and abuse of process (Count 5) and intentional infliction of emotional distress. (Count 6) (See ECF

---

[1] Except as otherwise noted, the factual summary is based solely on the undisputed facts set forth in the parties' statements of facts, the Plaintiff's Complaint, and the affidavits and other evidence filed with the Court as part of the summary judgment motion briefing. Those facts which are contested and have some support through submitted affidavits or other evidence will be addressed in the body of the opinion and shall be construed in the light most favorable to the Plaintiff as required under the Summary Judgment standards.

#1)[2]

All of Plaintiff's claims arise from the circumstances surrounding his arrest on August 31, 2016. In August of 2016, Defendant Wheeler, a detective with the City of Mansfield Police Department, was part of a multi-jurisdictional task force called the Metrich Enforcement Unit ("MEU") which was consisted of officers from various law enforcement agencies in and around Richland County. The City of Mansfield had requested the assistance of MEU to identify dealers and distributors of fentanyl laced heroin that had been associated with a high number of deaths and drug overdoses in Mansfield.

Detective Wheeler was familiar with Plaintiff, having encountered him in the course of various drug investigations in the Mansfield area. As part of its investigation, the MEU obtained heroin from Plaintiff which was tested and found to have a high concentration of acrylfentanyl. The MEU was also informed that Plaintiff possessed one or more weapons that he either had in his possession or at the location of his heroin distribution base, a motel at 880 Laver Road. Based on this investigation, a search warrant was obtained for 880 Laver Road. On August 31, 2016, Detective Wheeler and his partner, Detective Nicole Gearhart, were conducting surveillance operations prior to the execution of the search warrant at 880 Laver Road. Another member of the MEU, Richland County Sheriff's Deputy Meyers, assisted in his marked patrol car and was instructed to make a "felony car stop" if Plaintiff was observed driving his car.

It turned out that Plaintiff was observed driving his car toward 880 Laver Road, and

---

[2] Plaintiff also named Jane/John Does as defendants but has not identified them by name following completion of discovery. As such, the Jane/John Doe defendants will be dismissed.

Deputy Meyers activated his emergency lights and attempted to conduct a felony car stop. However, Plaintiff refused to pull over and continued driving into the parking lot of the motel at 880 Laver Road. Plaintiff stopped the car in front of his room and jumped out of the car, leaving two children in the back of the car. Deputy Meyers ordered Plaintiff to get on the ground and told him he was under arrest. Plaintiff declined to follow instructions and instead ran away toward Laver Road. At that time, Detectives Wheeler and Gearhart were in a wooded area near the motel maintaining a perimeter near the motel, as Plaintiff had a history of fleeing when confronted by police.

Detectives Wheeler and Gearhart observed Plaintiff fleeing and Deputy Meyers pursuing him. Deputy Meyers also had a canine who was dispatched to help subdue Plaintiff, but for unknown reasons the canine failed to engage Plaintiff and simply ran along beside Plaintiff. After observing the canine failure, Detectives Wheeler and Gearhart also began pursuing Plaintiff. As Detective Wheeler was getting closer to Plaintiff, he observed Plaintiff reach toward his waistband. Due to the information that Plaintiff may be armed, Detective Wheeler drew his service weapon and held it in his right hand as he ordered Plaintiff to get on the ground. Plaintiff slipped and fell and immediately got back up and turned toward Detective Wheeler in an "aggressive stance." At that point Detective Wheeler felt that an attack was imminent, so he struck Plaintiff on the top of his head with the butt of his service weapon. Plaintiff fell to the ground and the officers were able to place the Plaintiff in handcuffs. (Wheeler Aff., ECF #12-1, ¶¶ 15-26) Detective Gearhart confirms that Detective Wheeler drew his service weapon and held it in his right hand while ordering Plaintiff to get on the ground. She further states that at that point Plaintiff slipped and fell and immediately got back up and assumed a "fighting stance," turning quickly toward

3

Detective Wheeler at which point Detective Wheeler struck Plaintiff believing that "an attack was imminent." (Gearhart Aff., ECF #13-1, ¶¶ 16-18)

Plaintiff asserts that he ran because he was in fear for his life when he saw so many white officers holding guns and after allegedly having been beaten in 2008 by a Mansfield police officer. He also states that he was not reaching for a weapon but was holding up his shorts. Finally, he contends that he did not slip and fall, but was tired from running and turned around because he was at a wall and was not in an aggressive stance nor did he show any aggression. (Plaintiff Aff., ECF #17-1, ¶¶ 8, 9, 17, 19) After Plaintiff was handcuffed it was determined that Plaintiff was not armed.

Because Plaintiff was bleeding from a cut on his forehead, the arresting officers called the Mifflin Township Fire Department and Plaintiff was examined by an EMT and was then transported to the Richard County Jail. The jail refused to accept Plaintiff until he was medically cleared by a physician. Accordingly, Plaintiff was taken to Ohio Health in Mansfield where he received six staples to close the laceration on his head. Thereafter, Plaintiff was transported back to Richard County Jail. Following Plaintiff's arrest, the search warrants were executed on the motel room and Plaintiff was charged with a number of drug felonies as well as misdemeanor offenses associated with child endangering. Plaintiff plead guilty and is presently serving a six-year prison term.

Plaintiff filed a complaint with the Mansfield Police department alleging unlawful use of force in connection with his August 31, 2016 arrest. A use of force report was filed and a post-use of force investigation was conducted. The investigation found that Detective Wheeler's actions and response were reasonable due to the circumstances and complied with the guidelines of the

4

division's response to resistance/aggression continuum. Plaintiff received a letter from Police Chief Kenneth Coontz dated November 14, 2016, that informed him that the investigation into his complaint alleging use of force by Mansfield Police Detectives of the MEU was concluded and that after review of all reports and statements detailing the incident, the complaint against Detective Gearhart was determined to be "not involved" and the complaint against Detective Wheeler was determined to be "not sustained," however remedial training was issued to Detective Wheeler. (ECF #17-6).

More than a year and a half later, Plaintiff filed the instant complaint. Defendants Detective Wheeler and the City of Mansfield now move for summary judgment. Plaintiff has opposed the motion and Defendants have filed a reply brief in support of the motion. Defendants' Motion for Summary Judgment is fully briefed and ready for decision.

## STANDARD OF REVIEW

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires

5

consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252.

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as

an automatic grant of summary judgment, where otherwise appropriate. *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## ANALYSIS

In their Motion for Summary Judgment, Detective Wheeler argues that he is entitled to qualified immunity as to all of Mr. Croskey's federal claims and that Mr. Croskey has otherwise failed to present evidence sufficient to withstand summary judgment. The City of Mansfield argues that Mr. Croskey has failed to assert any valid claim against the City. Further, both Defendants argue that as Plaintiff has been unable to establish a federal claim, the Court should decline to retain jurisdiction over his state law claims.

**A. Plaintiff's Section 1983 Claims**

Moving first to Plaintiff's § 1983 claims against Detective Wheeler, Plaintiff asserts that Detective Wheeler violated § 1983 based upon race in violation of the equal protection clause; by using excessive force in effectuating his arrest in violation of the 4th Amendment; and by failing to provide Plaintiff with timely medical care. In order to prevail on a claim brought pursuant to § 1983, a plaintiff must establish by a preponderance of the evidence that a person acting under the color of law deprived him of a right secured by the United States Constitution or the laws of the United States. *Smoak v. Hall*, 460 F.3d 768, 777 (6th Cir. Tenn. 2006). A violation of § 1983 must be intentional or knowingly committed in order to be compensable. A negligent or reckless deprivation is not sufficient. *Ahlers v. Schebil*, 188 F.3d 365, 373 (6th Cir. Mich. 1999). Further,

7

an injury caused by mere negligence, that does not rise to the level of a constitutionally protected interest is not compensable under §1983. *See Collins v. City of Shaker Heights*, 503 U.S. 115 (1992).

Government officials are protected from liability for civil damages, including those that arise under §1983, "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

To determine whether qualified immunity applies in a given case, we use a two-step analysis: (1) viewing the facts in the light most favorable to the plaintiff, we determine whether the allegations give rise to a constitutional violation; and (2) we assess whether the right was clearly established at the time of the incident. *Campbell v. City of Springboro, Ohio*, 700 F.3d 779, 786 (6th Cir. Ohio 2012); see also *Saucier v. Katz*, 533 U.S. 194, 201 (2001). We can consider these steps in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

1. Plaintiff's Equal Protection Claim

While Plaintiff alleges a § 1983 claim based upon race, neither the Complaint nor Plaintiff's opposition to Defendants' Motion for Summary Judgment offers specific conduct that supports his claim that he was denied equal protection of the law based upon his race. Plaintiff's entire claim seems to be that he is African American and the officers involved in his arrest on August 31, 2016, were white. He further states that Detective Wheeler and the City of Mansfield have a history and/or policy of unlawful assault and use of excessive force upon black suspects and detention of such suspects without medical treatment. (Complaint, ¶¶ 12-13J) Plaintiff does not

explicitly state or show any evidence that white suspects are treated more favorably than black suspects. While Plaintiff does not use the terms "selective enforcement" or "racial profiling" no other recognized claim seems to fit this situation.

As the Supreme Court has stated: "[t]he central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race." *Washington v. Davis*, 426 U.S. 229, 239 (1976). The Equal Protection Clause prohibits the States from making distinctions that burden a fundamental right, target a suspect class or intentionally treat one differently from others similarly situated without any rational basis for the difference. *Vacco v. Quill*, 521 U.S. 793, 799 (1997). In order to maintain an equal protection claim, a plaintiff must show that the defendant acted with a discriminatory purpose, which means proving that the defendant undertook a course of action "because of, not merely in spite of, the action's adverse effects upon an identifiable group." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). Although the government retains broad discretion in deciding whom to arrest and prosecute, "[t]he Constitution prohibits selective enforcement of the law based on considerations such as race." *Whren v. U.S.*, 517 U.S. 806, 813 (1996). Selective enforcement can lead to section 1983 liability if the plaintiff can show purposeful discrimination. The presence of probable cause does not bar an equal protection claim. *Id.*

To establish a claim of selective enforcement based on race, the plaintiff must show 1) a government official singled the plaintiff out as belonging to a certain race for arrest even though the same government official decided not to arrest other similarly situated persons not belonging to the plaintiff's race; 2) the official initiated the arrest with a discriminatory purpose in mind; and 3) the arrest had a discriminatory effect upon the racial group to which the plaintiff belongs.

9

*Gardenhire v. Schubert*, 205, F.3d 303, 319 (6th Cir. 2000). In order to satisfy the first and third elements of this test, a plaintiff must make a prima facie showing that similarly situated persons outside of his race were not arrested. *Id.* He can do so by naming a similarly situated individual who was not investigated, or through the use of statistical or other evidence. *Farm Labor Organizing Comm. V. Ohio State Highway*, 308 F.3d 523, 534 (6th Cir. 1997).

Here Mr. Croskey has not identified a similarly situated individual outside of his race that was not investigated or arrested by Defendants for distributing heroin laced with fentanyl nor did he provide any statistical or other evidence to demonstrate that he was singled out because of his race or was treated differently by Detective Wheeler or the City of Mansfield because of his race.[3] Moreover, Plaintiff has not produced any evidence to show that Detective Wheeler purposely investigated and arrested Plaintiff because of his race. As such, Plaintiff has failed to establish an equal protection violation.

2. Plaintiff's Excessive Force Claim

Excessive force claims are analyzed under the Fourth Amendment's reasonableness standard. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). This standard encompasses "a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. Ohio 2002)

---

[3] Plaintiff asserts in his opposition to summary judgment that summary judgment should be denied because Defendants allegedly did not provide complete responses to discovery requests. As such, he contends that an inference should be made that the withheld discovery would be favorable to Plaintiff necessitating denial of Defendants' motion for summary judgment. However, discovery closed on May 1, 2019 and Plaintiff never moved to compel the allegedly incomplete discovery, nor did Plaintiff move for additional time to obtain evidence or other relief under Rule 56(d). As such, Plaintiff has waived his arguments based upon incomplete discovery.

(citing *Graham*, 490 U.S. at 396). It "allow[s] for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. "An officer should be entitled to qualified immunity if he made an objectively reasonable mistake as to the amount of force that was necessary under the circumstances with which he was faced." *Solomon v. Auburn Hills Police Dept.*, 389 F.3d 167, 175 (6th Cir. Mich. 2004) (citation omitted). The factors considered in assessing a constitutional excessive force claim include the particular facts and circumstances of each case, the severity of the crime, the threat posed by the suspect, and whether the suspect is "actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. "The 'reasonableness' of the particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

In this case, officers assigned to the MEU were attempting to arrest Mr. Croskey on serious charges in connection with an ongoing MEU investigation into the distribution of fentanyl laced heroin, which was connected to many overdose deaths in the Mansfield area. Mr. Croskey ignored all commands from the officers on scene, refused to stop his car as directed, refused to submit to arrest and was actively attempting to evade arrest by running away from Deputy Meyers. The fact that Plaintiff was fleeing caused Detectives Wheeler and Gearhart to join the foot pursuit. Plaintiff ignored Detective Wheeler's instructions to stop and put his hands up. Rather, Plaintiff reached for his waist and the detectives could not see why he was grabbing at his waist. They had information that Mr. Croskey could be armed. When Mr. Croskey suddenly stopped and turned around when Detective Wheeler was right behind him, Detective Wheeler thought that an attack was imminent

11

and hit him once with the but of his gun that he was holding in his right hand. While Plaintiff states that he did not turn around in an aggressive manner and grabbed his waist in order to hold up his shorts, it was not objectively unreasonable for a police officer, who had previous information that Plaintiff may be armed, to believe that Plaintiff was reaching for a gun at his waist instead of his shorts. Further, Plaintiff's actions in disregarding instructions and fleeing caused tensions to escalate. In the totality of these circumstances, Detective Wheeler's actions were objectively reasonable. Accordingly, Plaintiff has failed to establish a constitutional violation on the part of Detective Wheeler for excessive force.

3. Plaintiff's deliberate indifference claim.

The Eighth Amendment forbids prison officials from "unnecessarily and wantonly inflicting pain" on an inmate by acting with "deliberate indifference" toward the inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Pretrial detainees are analogously protected under the Due Process Clause of the Fourteenth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 545, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985). Whether a convicted prisoner or a pretrial detainee, deliberate indifference to one's need for medical attention suffices for a claim under 42 U.S.C. § 1983. *Roberts,* 773 F.2d at 723. Prison officials' deliberate indifference violates these rights "[w]hen the indifference is manifested by ... prison guards intentionally denying or delaying access to medical care ...." for a serious medical need. *Estelle*, 429 U.S. at 104, 97 S.Ct. 285. A constitutional claim for inadequate medical care has objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The objective component requires the existence of a "sufficiently serious" medical need. *Id.* The subjective component requires a plaintiff

to show that officials have "a sufficiently culpable state of mind in denying medical care," which is normally defined as "deliberate indifference." *Id.* Deliberate indifference "entails something more than mere negligence," and requires that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 835, 837, 114 S.Ct. 1970.

In this case Plaintiff does not allege that he was denied treatment, just that his treatment was slightly delayed. Plaintiff was evaluated at the scene of his arrest by the EMT. Instead of going immediately to the hospital for treatment, the officers took him to the Richland jail, where jail personnel refused to take Plaintiff until he was treated at the hospital. At that point Plaintiff was taken to the hospital where he received six staples. The appropriate medical treatment was completed before Plaintiff was incarcerated.

The Sixth Circuit has determined that a two hour delay in obtaining medical treatment for an arrestee's obviously swollen and broken hand did not rise to the level of deliberate indifference to an arrestee's serious medical needs, as required to establish a Fourteenth Amendment deliberate indifference claim against arresting officers even if the officer's should have known the injury was serious and required medical attention. *Hubbard v. Gross*, 199 Fed. Appx. 433, 438 (6th Cir. 2006) The Court determined that the Plaintiff presented no evidence to show that his broken hand was so serious that a two hour delay in receiving treatment was objectively unreasonable. Similarly, Mr. Croskey has not presented any evidence to show that his cut was so serious that the slight delay caused by a stop at the Richland jail before going for treatment was objectively unreasonable. In order to support a deliberate indifference claim, a plaintiff must present evidence that he was "incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.

13

Here Plaintiff received adequate and appropriate treatment before he was incarcerated at the Richland jail. Based on these circumstances, Plaintiff has not established a deliberate indifference claim.

**B. Municipal Liability–Failure to Train**

In Count Two of his Complaint, Plaintiff asserts a claim entitled "Failure to Train and Deliberate Indifference" against the City of Mansfield. (ECF 1, p.9) In this claim, Plaintiff alleges that under the City's policies, regulations, and customs, abuse and the use of excessive force by the Mansfield Division of Police has become the norm, and the same is condoned and uncontrolled by the City. Plaintiff further asserts that the City has failed to properly train its police officers. (Id. ¶¶ 19-21)

Local governments may not be sued under 42 U.S.C. § 1983 for an injury inflicted solely by employees or agents under a respondeat superior theory of liability. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. A municipality can, therefore, be held liable when it unconstitutionally "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690; see also *DePiero v. City of Macedonia*, 180 F.3d 770, 786 (6th Cir. Ohio 1999). A plaintiff must prove (1) the existence of a clear and persistent pattern of [illegal activity]; (2) notice or constructive notice on the part of the [defendant]; (3) the [defendant's] tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction;

and (4) that the [defendant's] custom was the "moving force" or direct causal link in the constitutional deprivation. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. Tenn. 2005).

Regarding municipal liability under § 1983, the Supreme Court has held that if the officer inflicted no constitutional injury on a person, then it is "inconceivable" that the City could be liable to the person. *DeMerrell v. City of Cheboygan*, 206 Fed. Appx. 418, 429 (6th Cir. Mich. 2006) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)(per curiam)). If "a person has suffered no constitutional injury at the hands of the individual police officer, the fact that department regulations might have authorized the use of constitutionally excessive force is quite beside the point." *City of Los Angeles v. Heller*, 475 U.S. 796, 799; Peet v. Detroit, 502 F.3d 557,

In this case, as noted above, Mr. Croskey has not suffered a constitutional injury. The failure to establish a constitutional injury inflicted by Detective Wheeler renders Mr. Croskey's claims against the City meritless. Accordingly, the City is entitled to summary judgment as a matter of law.

## C. Plaintiff's Section 1985 Claim

In Count Three of his Complaint, Plaintiff asserts that "the defendants, acting in concert with themselves and unnamed individuals, constitute conspiracy of defendants" ... "to deprive plaintiff of his rights in violation of the Constitution of the United States and 42 U.S.C. Section 1985." (ECF #1, ¶ 27)

While Plaintiff fails to explain which sub-section of Section 1985 his claim is based upon, the Court will presume that he relies on Section 1985(3). Section 1985(3) prohibits a conspiracy "for the purpose of depriving either directly or indirectly, any person or class of persons of the

equal protection of the laws or of equal privileges and immunities under the laws." 42 U.S.C. § 1985. To prevail on a § 1985(3) claim, a plaintiff must prove " '(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.' " *Vakilian v. Shaw*, 335 F.3d 509, 518 (6th Cir.2003) (*quoting United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828–29, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983)). Moreover, the Supreme Court has stated that "[t]he language requiring intent to deprive of equal protection, or equal privileges and immunities, means there must be some racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). In his complaint or his brief in opposition to summary judgment, Mr. Croskey has failed to allege any facts sufficient to establish a conspiracy claim under § 1985(3). Mr. Croskey has produced no evidence, beyond his own belief, to demonstrate his arrest on the night of August 31, 2016 was in any way motivated by racial or other class-based animus. *See Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005) and *Bass v. Robinson*, 167 F.3d 1041, 1051 (6th Cir. 1999) (both upholding dismissal of plaintiff's conspiracy claim, finding failure to show that police officers' use of excessive force was motivated by any invidious class-based animus). Because Mr. Croskey has not demonstrated either a conspiracy or an invidiously discriminatory animus on the part of Defendants, Defendants are entitled to summary judgment on Plaintiff's § 1985 claim.

### D. Plaintiff's State Law Claims[4]

Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over state law claims if it has dismissed all claims over which it has original jurisdiction. The Sixth Circuit agrees that dismissal of state law claims in this situation is the preferred course of action: "[i]f the federal claims are dismissed before trial, the state claims generally should be dismissed as well." *Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009) (citing *Wojnicz v. Davis*, 80 Fed.Appx. 382, 384–85 (6th Cir.2003) (citation omitted). Having determined that Defendants are entitled to summary judgment on all of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over Mr. Croskey's remaining state law claims and those claims are dismissed.

### CONCLUSION

For the reasons set forth above, the Defendants' Motion for Summary Judgment (ECF #12) is GRANTED as to Plaintiff's federal claims (Count One, Two, and Three). Plaintiff's state law claims are dismissed. IT IS SO ORDERED.

DATED: September 23, 2019

DONALD C. NUGENT
United States District Judge

---

[4] The Court is treating Plaintiff's claim for abuse of process in Count Five, as a state law claim as the Sixth Circuit has not recognized the existence of a § 1983 abuse of process claim. See Rapp v. Dutcher 444, 448 (6th Cir. 2014); *Voyticky v. Vill. of Timberlake, Ohio*, 412 F.3d 669, 676 (6th Cir.2005)